UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-0723

August 5, 2009

MEMORANDUM TO COUNSEL

      Re:    Mayor and City Council of Baltimore v.
                  Wells Fargo Bank, N.A. et al.,
                  Civil No. L-08-62

Dear Counsel:

        On July 2, 2009, the Court denied Wells Fargo's motion to dismiss and scheduled a Rule 16 discovery conference for August 6th. The parties have now submitted their respective discovery plans. These plans reflect a number of disagreements concerning the scope of discovery and the modes of proof. This memorandum poses questions that will be taken up at the hearing and states the Court's tentative rulings on some of the disputes.

I. In order to prove its case, the City must establish the following three elements.

    a. First, that Wells Fargo singled out blacks and black neighborhoods for oppressive loans.

        i. Query, is the focus on the racial composition of the neighborhood or the race of the borrower? For example, can the City sue based on an oppressive loan extended to a white living in a predominantly black neighborhood? Can Wells Fargo defend against the predatory lending charge by pointing to fair loans extended to blacks living in predominantly white neighborhoods?

        ii. Query, how does the City propose to compare individual loans made to individuals living in black and white neighborhoods? The City has mentioned a statistical approach under which its statisticians can control for different variables, including race. What are the most analogous cases that this approach been used in? Should the validity and methodology of this approach be litigated at the outset to avoid a costly <u>Daubert</u> hearing after discovery has closed?

    b. Second, that the oppressive loans extended in black neighborhoods caused foreclosures and vacancies.

       i. Under the City's theory, a loan is actionable if the borrower could have afforded and would have qualified for a fair loan but the oppressive loan pushed him over the edge. Example, the borrower could have afforded a mortgage payment of $1,000 a month (the fair loan), but he could not afford $1,500 a month (the unfair loan), and the extra $500 monthly burden caused the foreclosure and vacancy.

      ii. Should a loan count if the borrower would have fallen behind on any loan, whether fair or unfair, because of an intervening event such as illness, divorce, or job loss?

      iii. Should a loan count if the borrower damaged his own balance sheet after receiving the Wells Fargo loan by taking on additional, irresponsible debt?

      iv. Should a loan count if the borrower could not afford any loan, no matter how fair the terms, but Wells Fargo made the loan anyway? Example, a so-called "liar's loan" made to an uncreditworthy person who misrepresented his income.

      v. Should a loan count if the borrower is an investor, developer, LLC or a corporation?

   c. Third, that the vacancy harmed the City in a quantifiable way.

      i. Query, at what point does the harm caused by a vacant house become too remote to be compensable, as – for example – if there are other vacant homes on the same block, or if the house was vacant only temporarily, or if the home was vacant before the loan was made, or if the borrower used the proceeds of the loan to improve the property, or if Wells Fargo has been maintaining the property and paying property taxes post-foreclosure?

II. Discovery Disagreements

   a. Whether discovery should be bifurcated, with the standing/damages issues to be decided before liability discovery begins. The Court is not inclined to bifurcate discovery, although the loan years subject to inquiry remain to be determined.

   b. Whether the City is entitled to files of loans that did and did not result in a foreclosure? Yes. Fair Housing Act cases require the fact finder to make comparisons between loans extended to blacks and loans extended to similarly situated whites.

   c. The City is apparently limiting its cases to properties that were the subject of a foreclosure action. Should a property be included if the borrower gave the lender a deed in lieu of foreclosure after a formal notice of foreclosure was filed?

      i. Is the City prepared to prove that it is harmed by a mere notice of foreclosure that does not result in a vacancy?

       d. The City wants electronic information regarding Wells Fargo's loans in Baltimore since 2000, whether foreclosed or not. From this pool, the City would identify a statistically smaller group, or sample, of loans. The City will then request Wells Fargo to produce complete loan files and other records for this smaller sample.

            i. At what stage in the litigation should the Court resolve whether the City's chosen sample would yield statistically reliable data?

III. Should the parties bypass the statistical approach, with its attendant analytical problems, and focus instead on all loans extended during a test period (e.g., a six-month interval)? Following this approach, the City would be entitled to discover Wells Fargo's underwriting models and pricing guidelines for the entire period, but only those loans made during the test period would be examined.

IV. Preliminary Rulings. The Court is inclined to permit discovery into the following areas:

       a. Wells Fargo's underwriting, policy, and pricing guidelines, its underwriting models, its electronic filters, and related documents.

       b. The various channels (e.g., mortgage brokers, Wells Fargo affiliates) through which loans were developed for Wells Fargo.

       c. The relationships that Wells Fargo developed with other companies (e.g., real estate appraisers, title companies) in the real estate industry.

       d. 30(b)(6) depositions regarding Wells Fargo's document retention and electronic data systems. This includes the burden imposed on Wells Fargo to provide discovery into pre-2005 loans.

       e. 30(b)(6) depositions to identify individuals knowledgeable concerning Wells Fargo's loan practices.

       f. Although the historical period remains to be determined, the Court is inclined to permit discovery into each of the areas outlined in paragraph six of Mr. Relman's letter.

       g. Wells Fargo's discovery of City information. Subject to fine-tuning, the items described in Mr. Relman's letter are unobjectionable and, therefore, approved.

V. Cost sharing. To be determined after the costs (production, copying, and the like) have been more accurately identified.

VI. Scheduling.

       a. As proposed by Wells Fargo, the Court will expect Wells Fargo's response to the City's Amended Complaint on September 18, 2009.

       b. Discovery deadlines.

       c. Briefing schedule for summary judgment motions.

/s/
Benson Everett Legg
Chief Judge
United States District Court