**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

|  |  |  |
|---|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | No. 1:08-cv-00062-JFM |
| WELLS FARGO BANK, N.A. | ) ) ) |  |
| and | ) ) |  |
| WELLS FARGO FINANCIAL LEASING, INC., | ) ) ) ) |  |
| Defendants. | ) ) |  |

**WELLS FARGO'S PROPOSED DISCOVERY PLAN**

Pursuant to this Court's Order dated May 17, 2011 (Doc. No.194), Defendants Wells Fargo Bank, N.A. and Wells Fargo Financial Leasing, Inc. ("Wells Fargo" or "Defendants") set forth herein a proposed discovery plan in connection with the Third Amended Complaint ("TAC") filed by the Plaintiff, Mayor and City Council of Baltimore ("the City" or "Plaintiffs").[1]

**I.   Discovery Must Be Limited to the 190 Properties as to Which the City Has Alleged Damages.**

The scope of this case is a threshold issue that must be reaffirmed as a predicate to any discussion of specific discovery parameters and timing. Over the past several weeks, the parties engaged in a meet and confer process regarding discovery to be undertaken in the instant

---

[1]   Pursuant to the Court's Order, the Parties undertook a meet and confer process that involved a series of telephonic conferences between May 16, 2011 and June 17, 2011. The Parties were not able to reach agreement.

case. Although Wells Fargo sought to reach agreement with the City on foundational matters, it has become apparent the City does not intend, unless specifically ordered, to abide by the Court's circumscription of its case to "narrower, property specific" damages relating to the "properties in question" (Doc. No. 185, at 2) —that is, the properties identified in paragraphs 119-308 of the Third Amended Complaint (the "190 Properties").

Although the City has spent more than three years narrowing the case to 190 Properties following two dismissal orders by this Court, the City now takes the view that these properties are mere placeholders for further properties it may identify during the course of sweeping discovery. In other words, while the City substantially narrowed the scope of its Complaint in order to survive Rule 12, it now hopes to pursue the much broader claims pled in its original Complaint filed in January 2008.

Wells Fargo submits that if pleading based on illustrative example were adequate, the ten properties identified in the First Amended Complaint ("FAC") approximately two years ago would have sufficed. (*See* FAC ¶¶ 114-119). There, the City alleged specific municipal expenditures and lost property tax revenue in connection with ten identifiable properties. (FAC ¶¶ 118, 123). Then, relying on these properties as examples, the City attempted to persuade the Court to accept a novel quasi-class mechanism which would have permitted it to pursue city-wide damages "in the tens of millions of dollars." (FAC ¶ 124).

The Court squarely rejected this theory, dismissing the case and later characterizing the City's pursuit of generalized damages as a "fundamental flaw" (Doc. No. 174 at 1). The Court granted leave for the City to file a Second Amended Complaint, but only insofar as the City sought to "assert[] narrower claims." (Doc. No. 141, at 1). More precisely, the Court directed the City to allege a claim for "specific damages" in connection with "specific

2

houses that became vacant allegedly because of Wells Fargo's lending activities." Id. at 6.  In dismissing the Second Amended Complaint and "reluctant[ly]" granting leave to file a third complaint, the Court noted that "it may well be that the damages (if any) that the City might eventually be awarded would be extremely limited."  (Doc. 174, at 2).  The Court could not have intended merely to require the City to thread its theory through a different procedural needle and then to swing open the door to the City's original expansive claims in discovery.  Indeed, the nature of the damages it claims in the Third Amended Complaint is unchanged from its original Complaint—the only difference is the scope.

During the meet and confer process, the City suggested that expansive discovery is proper because, among other reasons, the City seeks to obtain from Wells Fargo additional information useful in identifying the properties that form the basis for its damages.  This argument is wholly without merit.  Information on mortgage liens, property ownership, and foreclosure actions is available through publically-available sources including the Maryland court records and the Maryland land records.  Moreover, information on the property-specific injuries allegedly suffered by the City is uniquely in the possession of the City.

In short, there is no basis for the City's assertion that it should be permitted to engage in expensive and time-consuming discovery regarding properties not identified in the Third Amended Complaint.  It has long had access to the tools needed to identify the properties that form the basis for its claims (and presumably relied on these resources in drafting even the original Complaint which alleged damages based on Wells Fargo foreclosures).

The City has further suggested that expansive discovery regarding properties not identified in the Third Amended Complaint is proper because as yet unidentified properties might confer standing if standing cannot be demonstrated in connection with the 190 properties.

This very course of conduct has been considered and rejected in this Circuit. "Where, as here, a party 'simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction,' the Court does not abuse its discretion by refusing to allow discovery." Trans/Air Mfg. Corp. v. Merson, 524 F. Supp. 2d 718, 721 (D. Md. 2007) (citing Base Metal Tarding, Ltd. v. "Novokuzenetsky Aluminum Factory," 283 F.3d 208, 216 (4th Cir. 2002).

The City's intended approach turns the Court's multitude of orders in this case on their head. Indeed, the Court dismissed the FAC precisely because the City had not specifically identified the property addresses at which it purported to have incurred damages. *See* Doc. 141, at 6 (permitting leave to amend in order "to pursue a more limited claim, such as a claim for specific damages allegedly suffered by the City in regard to specific houses that became vacant . . . or a claim for damages allegedly caused to a specific neighborhood. . ."). Once it had done so, the Court dismissed the Second Amended Complaint because the City had not adequately alleged that the property addresses specifically identified would have been occupied but for a Wells Fargo loan, and invited the City to refile only if it could do so consistent with Rule 11. As the Court has noted, to have standing, plaintiffs "must allege that they have been harmed in fact, not that they 'can imagine circumstances in which [they] could be affected.'" Doe v. Blue Cross Blue Shield, of Md., Inc., 173 F. Supp. 2d 398, 403 (D. Md. 2001) (citation omitted).

The Court's rulings clearly limit this case to the 190 "properties in question" (Doc. 185, at 5), and to the "two types of property-specific damages" pled as to those 190 Properties. Id. at 5, n. 2. Accordingly, discovery must be tailored to, and conducted consistent with, this focus. Wells Fargo's proposed bifurcated discovery plan is the most logical, economical, and efficient way to achieve this end because of the unique constitutional question presented in this case. Here, the traceability of damages is dispositive of liability. If the City

cannot show that the damages it alleges to have suffered during the relevant period were caused by Wells Fargo, it does not have standing to proceed with its case.  Discovery relating to causation is the most expedient and economical way to square these defenses for testing at summary judgment.

Wells Fargo proposes an initial phase of discovery focused on determining whether loans originated in connection with the 190 Properties were the fairly traceable cause of the damages alleged by the City.  During this first phase, discovery will be focused on whether the injuries alleged by the City at the subject properties were caused by a "bad" (Doc. No. 174, at 1) Wells Fargo loan—that is, a loan that was improper, either because Wells Fargo: (i) "steered African-American borrowers who qualified for prime loans into more onerous subprime loans" or (ii) because Wells Fargo "approved unqualified African-American borrowers for refinance or home equity loans when Wells Fargo knew or should have known that these borrowers would be unable to make the required monthly payments" on homes they already "own[ed] and occup[ied]." (Doc. No. 185, at 5-6).

As discussed further below, Wells Fargo's phased approach to discovery will enable the parties to focus on the threshold issues pertinent to the viability of this case before embarking upon millions of dollars of time-consuming discovery relating to matters that need only be reached if the City is first able to establish standing.  Stated another way, while Wells Fargo steadfastly denies that it has engaged in the discriminatory conduct alleged, the occurrence of this alleged discrimination is irrelevant in this action unless the vacancy at issue was caused by Wells Fargo rather than, for example, the death of the borrower, destruction of the property, or any other personal tragedy.

## II. Bifurcated Discovery Is An Efficient and Economical Way to Resolve The Antecedent Question in This Case.

District courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *See* Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (quoting In re Multi-Piece Rim Prods. Liab. Litig., 653 F.2d 671, 679 (D.C. Cir. 1981)).  Bifurcated discovery is a well-recognized mechanism enabling courts to "maximize efficiency and convenience, and minimize unfair prejudice and delay" where, as here, the viability of a claim depends upon resolution of an antecedent question. Savage v. Mayor & City Council, Salisbury, Md., No. CCB-08-3200, 2009 WL 1119087, at *4 (D. Md. Apr. 22, 2009).  *See also* Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 312 (4th Cir. 2001) (noting bifurcation of discovery in discrimination case where it was appropriate to resolve threshold question); Ardrey v. United Parcel Service, 798 F.2d 679, 680-81 (4th Cir. 1986) (affirming district court's exercise of discretion to bifurcate discovery in discrimination case); James v. Frederick Cnty. Pub. Sch.'s, 441 F. Supp. 2d 755, 762 (D. Md. 2006) (holding that "as a matter of efficient case management," discovery would be bifurcated to address an antecedent question in the first instance).

The antecedent question here is whether the City can show that it has suffered an injury fairly traceable to the Defendants.  "The traceability requirement ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court."  Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002).  *See also* Allen v. Wright, 468 U.S. 737, 757 (1984) (ruling that plaintiffs had no standing because the "line of causation" between the alleged conduct and claimed injury was "attenuated at best.").

Put simply, bifurcation of discovery is within the Court's discretion and consistent with judicial efficiency and economy in this case. If the City cannot establish that it has suffered injuries—allegedly, increased municipal costs and decreased property tax revenues—that are fairly traceable to Wells Fargo, the Court need not reach the question of alleged discrimination in violation of the Fair Housing Act ("FHA").

### A.  The Initial Discovery and Related Timelines Proposed By Wells Fargo Will Maximize Efficiency and Reduce Economic Burdens.

Consistent with the discovery parameters outlined above, Wells Fargo proposes to provide the City with readily-accessible origination, underwriting, and servicing documentation for the Wells Fargo loans secured by the 190 Properties[2] to include documents such as:

- Loan applications;
- Credit reports;
- Truth-in-Lending Statements;
- Notes;
- HUD-1s;
- Payment histories;
- Workout Plans;
- Applicable rate sheets; and
- Applicable underwriting guidelines.

Wells Fargo also is prepared to produce a list of the primary computer systems currently in use in connection with the origination and servicing of residential mortgage loans

---

[2] While Wells Fargo views this approach as a reasonable avenue to test the City's standing to pursue its claims, it is important to note that, as a matter of law, it also would be appropriate to limit discovery to loans among the 190 that were originated by a named defendant within the statute of limitations in connection with owner-occupied properties. *See infra*, Part III.

7

and a data dictionary for these computer systems (or the equivalent).  These materials will be provided so that the parties may reach agreement on data fields to be produced.

Wells Fargo respectfully submits that insofar as the parties are evaluating, in this first phase of discovery, whether an improper Wells Fargo loan was the cause of the City's damages, materials related to the subject properties should be sufficient.  Indeed, one can determine, based on the materials outlined above, whether a borrower was: i) qualified for a prime loan, but nonetheless received a subprime loan; or ii) unqualified for any loan, but nonetheless received a loan.

Notwithstanding the absence of any need to analyze information beyond that outlined above, Wells Fargo understands that the City intends to request data on all loans originated by Wells Fargo in Baltimore City since the year 2000, as well as documents related to a subset thereof.  The extraction of data spanning more than a decade is unjustified for purposes of establishing the claims permitted by this Court in its April 22 Order, immensely labor-intensive, and, in some cases, infeasible.[3]

Insofar as the Court grants the City permission to seek comparator file information beyond that which relates to the 190 Properties, Wells Fargo respectfully submits that such information should be limited to a mutually agreeable corollary set of data, documents, and information relating to a limited number of randomly-selected, performing loans originated

---

[3] Requiring discovery of data and documents predating January 1, 2005 would be burdensome, difficult, and incomplete in a variety of ways.  One of the most salient examples relates to loans that are not active on Wells Fargo's servicing system—a number that increases substantially going farther back in time.  Servicing data and documents associated with these loans becomes increasingly more inaccessible the longer the loan has been inactive.  As discussed during the February 20, 2009 hearing on Defendants' Motion to Dismiss, retrieval of data and information pertaining to loans with a terminating event (for example, payoff or foreclosure sale) that predates January 1, 2005 will be both time-consuming and expensive for the Defendants because such information has been archived and is largely unavailable on Wells Fargo's active loan servicing system. (Hr'g Tr. 3:12-4:10 Feb. 20, 2009).  Servicing- related information regarding loans that pre-dated January 1, 2005 is also difficult to obtain and/or less complete in a variety of other , but in many instances, Wells Fargo will not be able to identify each impacted loan without conducting tedious loan-by-loan and data point-by-data point searches. Insofar as the Court desires an affidavit from Wells Fargo on matters related to data availability, Wells Fargo stands ready to provide such affidavit.

by Caucasian borrowers in census tracts with white populations of 60% or greater. Such data will permit Plaintiffs to engage in qualitative and quantitative analysis encompassing comparator loans without burdening Wells Fargo with responding to voluminous discovery requests which will require time-consuming and complex retrieval.

Wells Fargo proposes to obtain discovery from the City on matters relating to default causation for the Subject Loans and all properties within a negotiated radius (to encompass the City's 37 subneighborhoods). This information shall include discovery relating to:

- Property ownership;
- Housing code violations;
- City-imposed liens;
- Property tax assessments;
- Municipal expenditures; and
- Other matters pertaining to default causation.

The City will be asked to provide Wells Fargo with a list of all computerized and other record keeping systems in which such information is housed, together with a data dictionary (or the equivalent), which identifies the fields of information available in each of these systems. From these materials, Wells Fargo will identify fields of data that it would like to obtain and will engage in further discussions with the City about the reasonable accessibility of such fields and associated production.

Wells Fargo anticipates that discovery outlined above can be completed over the course of 13 months, with the following internal deadlines:

- Completion of document production within 8 months;

- Disclosure of Rule 26 expert information within 9 months;

- Completion of fact depositions, interrogatories, and requests for admission within 10 months;

- Completion of initial expert reports within 11 months;

- Completion of rebuttal expert reports within 12 months;

- Completion of expert witness depositions within 13 months; and

- Filing of dispositive motions within 90 days after the close of discovery.

### III. Any Discovery Outside of the 190 Properties Must Be Appropriately Limited.

If the Court determines, notwithstanding its prior Orders and the scope of the TAC, that the City is entitled to discovery relating to properties not identified in the TAC, it is appropriate, as a matter of law, to exclude three categories of loans from discovery. These categories of loans include: i) loans outside the FHA's statute of limitations; ii) loans made to investors; and iii) loans not originated by Wells Fargo.

The statute of limitations under the FHA requires that civil actions must be filed "not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Given that the original Complaint was filed on January 8, 2008, the City must demonstrate a violation of the FHA which occurred on or after January 8, 2006 in order to proceed. While assertion of a "continuing violation" may permit the Plaintiff to enlarge the two-year statute of limitations, the Supreme Court has observed that the "last asserted occurrence of the pattern" must fall within the statute of limitations period. Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982). As alleged violations predating January 2006 will not be actionable if a violation within the statute of limitations period cannot be established, it is inefficient, imprudent, and burdensome to engage in discovery on loans

10

originated during a six-year timeframe that predates the commencement of the limitations period.[4] See Parish v. Ford Motor Co., 953 F.2d 1384, at *7 (6th Cir. 1992) (ordering the district court to allow the plaintiff to discover relevant personnel files within the limitations period and noting that, if the plaintiff "on remand bears his burden of alleging a discriminatory act within the limitations period and presents sufficient supporting evidence to overcome Ford's motion for summary judgment, he will then be entitled to a broader scope of discovery to support his theory that there existed a company-wide policy of age discrimination at Ford"); Caldwell v. Rowland, 932 F. Supp. 1018, 1022 (E.D. Tenn. 1996) (allowing discovery to proceed in order to determine whether the plaintiffs could "bear [their] burden of alleging a discriminatory act within the limitations period and present []sufficient supporting evidence to overcome [Defendants'] motion for summary judgment.")

Second, loans to investors must be excluded because the FHA does not apply to properties that are "not occupied, or intended for occupancy by the purchaser as a residence." Moore v. Red Roof Inn, Civ. A. No. HAR 87-2134, 1989 WL 85364, at *2 (D. Md. July 27, 1989). See also Shaikh v. City of Chicago, No. 00 C 4235, 2001 WL 123784, at *2-4 (N.D. Ill. Feb. 13, 2001). In Shaikh, the minority plaintiff sought to purchase an apartment building in Chicago from HUD. Id. at *1. Though the plaintiff was the highest bidder during a public auction of the property, the City of Chicago threatened to condemn the property if the plaintiff purchased it. Consequently, the plaintiff withdrew his bid and HUD immediately sold the building to a non-minority purchaser. Id. When the City of Chicago did not subsequently

---

[4] As noted in footnote 3, infra, retrieving data and documents predating January 1, 2005 will be burdensome, difficult, and incomplete in numerous ways. These challenges underscore the conclusion that the initial phase of discovery, insofar as it extends beyond the 190 Properties identified in the Third Amended Complaint, should be confined to the statute of limitations period.

11

condemn the property, the plaintiff sued, alleging that it violated § 3604 of the FHA by interfering with the sale.

The City of Chicago sought to dismiss the action on grounds that the FHA did not apply to commercial ventures. Acknowledging that the apartment building was "a dwelling as defined by the FHA, albeit a dwelling that [the plaintiff] planned to buy as a commercial investment rather than as a home for himself," the court emphasized that the plaintiff failed to allege "that the defendants' conduct was motivated by the protected class status of anyone intending to inhabit the property." Id. at *3-*4. Observing that the principal purposes of the FHA are to further equal-housing opportunity and to eliminate segregated housing, the court dismissed the FHA claim because "the FHA does not apply to the sale of residential property to a person who is buying the property as a commercial venture, has no intention of residing in the property, and is not suing on behalf of protected class members who would reside there." Id. at *4. Courts faced with the same issue have followed this holding.[5]

Third, loans not originated by Wells Fargo must be excluded because the gravamen of this case relates to mortgage lending practices. It is axiomatic that if the named defendants did not make a loan, they cannot be liable for damages alleged to be associated with its origination. In Sucklal v. Fremont Reorganizing Corp., No. 1:09-cv-01058 at 3 (D. Md. Apr.

---

[5] *See, e.g.,* Mitchell v. Citizens Bank, No. 3:10-00569, 2011 WL 101688, at* 2 (M.D. Tenn. Jan. 11, 2011) ("For a FHA claim, the commercial property owner must allege that 'the defendant engaged in unlawful discrimination against a person or class of persons who reside or would reside in the dwelling absent the unlawful discrimination.'") (citation omitted); Home Quest Mortg. LLC v. Am. Family Mut. Ins. Co., 340 F. Supp. 2d 1177, 1186 (D. Kan. 2004) ("This court agrees with the district courts' holdings in Shaikh and Lunini. As discussed previously, the FHA broadly encompasses most residential property short of lodging for transient guests, but it does not extend to commercial property. Extending the FHA to prevent discrimination against a person who owns residential property as a commercial venture would do nothing to further the stated purpose of the FHA, which is to 'provide for fair housing.' 42 U.S.C. § 3601. Under such circumstances, there is no causal nexus between the alleged discrimination and the alleged denial of the use of a dwelling. Even if the commercial property owner suffers discrimination, the commercial property owner has not been denied any housing."); Lunini v. Grayeb 305 F. Supp. 2d 893, 915 (C.D. Ill. 2004) ("This Court agrees with the ruling in Shaikh and finds that the FHA does not apply to commercial ventures in which the party alleging discrimination did not intend to reside."), *rev'd in part on other grounds*, 395 F.3d 761 (7th Cir. 2005).

24, 2009), this Court dismissed FHA claims against defendants not "alleged to have had any interest in the loans made to plaintiff until after the original loans were made" because "they cannot have been guilty of 'reverse redlining' in making the loans alleged by plaintiff." Id. at *1. The court in Wright v. Castle Point Mortgage, No. 05-cv-4851, 2006 U.S. Dist. LEXIS 32761 at*10-*11 (D. N.J. May 22, 2006), similarly found that allegations of "discrimination in the terms of the loan contract" cannot apply to a purchaser of loans.

\*\*\*

For the reasons set forth above, Wells Fargo respectfully submits that the Court should enter an order governing the scope and timing of discovery which is consistent with Wells Fargo's Proposed Discovery Plan.

Respectfully submitted,

/s/ Andrew L. Sandler
Andrew L. Sandler (MD Fed. Bar No. 22950)
Benjamin B. Klubes (MD Fed. Bar No. 08085)
Jonice Gray Tucker (MD Fed. Bar No. 26484)
Valerie L. Hletko (*pro hac vice*)
BUCKLEYSANDLER LLP
1250 24th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
asandler@buckleysandler.com
bklubes@buckleysandler.com
jtucker@buckleysandler.com
vhletko@buckleysandler.com

*Attorneys for Defendants Wells Fargo Bank, N.A. and Wells Fargo Financial Leasing, Inc.*

## **CERTIFICATE OF SERVICE**

      I certify that on June 20, 2011, a copy of the above and foregoing was electronically filed in this case and was duly served upon counsel of record by operation of the Court's ECF system.

Dated: June 20, 2011                      /s/ Valerie L. Hletko
                                                     Valerie L. Hletko